**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**DENVER DIVISION**

Civil Action No. _____

Calvin L. White_, Plaintiff

v.

James E. Albertelli, PA dba, ALAW,

Specialized Loan Servicing ,LLC,

**FILED**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

**DEC 17 2021**

**JEFFREY P. COLWELL**
**CLERK**
_____

**Jury Demand**

---

**COMPLAINT**
**FOR BREACH OF CONTRACT, FDCPA, RESPA, MISREPRESENTATIONS**
**UNDER GEORGIA'S RESIDENTIAL MORTGAGE ACT (GRMA), BREACH OF**
**LEGAL DUTY, AND BREACH OF GOOD FAITH DEALINGS**

---

**JURISDICTION:**

1. This Court has original jurisdiction over this action under diversity of citizenship 28 U.S.C. §1332 (a) (1) and where the damage for this action meets or exceeds $75,000.00. Further, the District Court of Colorado, Denver Division, has both subject matter and personam jurisdiction over a Defendant for this action.

2. Alternatively, this Court has jurisdiction under 28 U.S.C. §1331, where federal questions at law are present for adjudication. Federal questions arise under 12 U.S.C. §2601 et. seq. and 15 U.S.C. §1692 et. seq., respectively. Supplemental jurisdiction for pendant State claims arising under 28 U.S.C. §1367, accordingly.

**VENUE:**

3. Venue is proper because Defendant Specialized Loan Servicing , ("SLS" hereafter) is a Citizen of the State of Colorado principal place of doing business is located in Littleton, CO in accordance with 28 U.S.C. §1441.

4. Further, Defendant James E. Albertelli, PA, also, referred as ALAW, principal place of

doing business is in Tampa, FL where all the executive officers conduct their headquarters and operations. The law firm conducts multi-state foreclosures and only operates through its managing attorneys in Georgia. Their registered agent are citizens of the State of Florida.

5. Mr. White, the Plaintiff, is a citizen of the state of Georgia. His residence and home is located at 4520 Mossey Drive, Lithonia, GA 30038,  He has lived in this home, which is the subject property for this action, for more than twelve (12)  years.

6. There are no pending actions between the parties that would deprive or cause a judicial conflict or deny this Court of its original jurisdiction and venue for adjudication purposes, herein.

## PARTIES:

7. Plaintiff is Calvin White, herein after is referred to as Mr. White or simply the Plaintiff, whenever the context is appropriate.

8. Mr. White is a Consumer and Senior Citizen whose age is 58 years old.  The Plaintiff is a citizen that  resides and domiciles in Georgia at the subject property located at  4520 Mossey Drive, Lithonia, GA 30038. For this action, the Plaintiff and his property are the indispensible parties for adjudication purposes.

9. The Defendants are  James E. Albertelli, PA, dba "ALAW" and Specialized Loan Servicing , LLC, ( hereinafter referred to as "SLS").

10. SLS's principal place of doing business is in Littleton, CO with a business address located at 8742 Lucent Blvd., Suite 300, Highlands Ranch, CO  80129

11. ALAW's principal place of business is located at  5404 Cypress Center Drive, Suite 300, Tampa, FL 33609.  James E. Albertelli is the CEO and Founder .

12. Defendants shall served through their legal agents, respectively.

### I.

### BACKGROUND AND STATEMENT OF FACTS

13.    On or about October 27, 2021, Plaintiff has reasons to believe that SLS hired ALAW to initiate a debt collection demand letter that he received for the purpose of  accelerating an unknown debt  to dispossess and  which would foreclose  on his home. See **Exhibit A-** Acceleration Notice Letter.

14.    Whereas, the letter expressly advised  Mr. White that SLS was seeking to serve Henry Higgins with an acceleration notice and that purportedly Higgins lived and possessed  the

subject property, located at 4520 Mossey Drive. Further the home was understood to be used for collateralization purposes to secure that debt  for Higgins while  Defendants sought a principal balance of $502, 400.00 and attorney fees for ALAW.

15.     Whereas, an unbeknownst to Mr. White, the Creditor  and transaction were purported to be as follows:

> " Bank of New York Mellon fka Bank of New York, As  Trustee for the Certificate holders for CWABS, Inc Asset-Backed Certificates, 2007-1 ,originally made by Henry Higgins To Mortgage Electronics Registration Systems, Inc, as nominees for Foundation Finance Group."

16.     Mr. White perceived that this notice was for all practical purposes a bona fide threat against his the home with a pending foreclosure sale date set on December 7, 2021.

17.     Further, he became depressed and suffered from anxieties because, he treid on multiple occasions to stop the proceedings.  At all times, Mr. White was blameless from any payment default nor was he involved in that original transaction cited in the notice.

18.     The Plaintiff alleges that the action was initiated unjustifiably, predatory and with overt threats that would cost  him with the lost of his home. Among other things, Mr. White alleges that his title was slandered by the pending foreclosure sale auction.

**19.**     Further, in support that the acceleration and foreclosure threat were emanate, Mr. White alleges that he began receiving mail notices from bankruptcy law firms advising him to file a bankruptcy action to stay the pending sale. See **Exhibit-J- Bankruptcy Attorneys Solicitation due to Pending Foreclosure Sale.**

20.     Further, Mr. White alleges because of the published notification , his privacy and property rights were invaded and trespassed upon.

21.     Whereas, it is alleged that countless of unwelcomed homebuyers and investors intruded upon his property to see his home for their bidding purposes.

**22.**     Whereas, Mr. White's home is very attractive and it has a current value of over $650,000.00 which has drawn much attention. See **Exhibit -K- Real Estate Market Value Estimate.**

23.     Plaintiff alleges that Defendants are the direct and proximate cause for using faulty information that misplaced Henry Higgins whereabouts and his debt as security with Plaintiff's property.

24.    On or about November 29, 2021, at about 2:20 PM E.S.T., Mr. White alleges that he called ALAW and spoke to their office clerk to advise the firm of a mistaken identity. Plaintiff asserted that he was the "real" property owner and the titleholder, since 2009.

25.    However, the Clerk by the name of Regina Rodriguez, placed the Plaintiff on hold for a long period of time. Presumptively, the clerk talked to one of the staff attorneys. However, unpleasantly she returned and replied to him that the law firm was going to proceed with the sale. [**Emphasis added**].

26.    Thereafter, the law firm's statement cause Mr. White to begin researching for information concerning past owners of his home.

27.    Plaintiff found in DeKalb County's land records, that at one time Henry Higgins had a mortgage which encumbered the subject home. However, later on, Henry Higgins sold his home to another buyer, by the name of James Parker. See **Exhibit-C- James Parker's Settlement Statement for 4520 Mossey Drive**.

28.    Subsequently in 2009, DeKalb County has evidence that the subject home was bought and later on refinanced by United Mortgage under a federal FHA Loan with a Case No. **105-5248627-703.**

29.    Further, in and around 2009, Mr. White's former wife acquired the subject property from Mr. Parker by a title transfer.

30.    Many years later, Mr. White entered into a divorce settlement. Thereafter, Mr. White took over the full interests in the subject property by a Warranty Deed transfer in 2016.

31.    Whereas, Mr. White affirms that he is the successor-in-interests to James Parker's FHA's security instrument.

32.    Further, Plaintiff has had no defaults from any mortgage payments nor has there been any delinquencies with the County for property taxes, respectively. See **Exhibit B-** DeKalb County Tax Assessors Statement.

33.    Whereas, it is alleged that the Defendants acceleration notice were a complete shock and surprise to the Plaintiff. Further, Plaintiff alleges that Defendants failed to investigate by a diligent title search or by skip trace methods to locate Henry Higgins.

34.    Plaintiff believes and alleges that Defendants action does not complies with Georgia's foreclosure statues and procedures governed under OCGA § 44-14-160§§§ 164 et. seq., collectively.

4

35.    Mr. White alleges that he has not been served with any valid default from a loan obligation in accordance with applicable laws that would have caused for a foreclosure upon his property.

36.    Plaintiff alleges that the notice and publication were executed by dubious and wrongful foreclosure practices.

37.    Further, it is alleged that apparently, those notices gives the inference that an identity theft occurred or where faulty mortgage data has been merged to include his property's address.

38.    Plaintiff re-alleges that he is an innocent victim of Defendants' torts and erroneous servicing and debt collection practices.

39.    Plaintiff affirms and alleges that he has never been indebted to Foundation Financial Group nor to CWABS, Inc, Series 2007-1 nor has SLS sent him in his name for any billing and servicing notices, such as, a transfer of servicing notice nor payment demands for escrows nor billed him for principal and interests, prior to October 27, 2021 communications.

40.    Whereas, prior to the acceleration notice, the litigants has had no communications concerning his home, whatsoever.

41.    Now, Mr. White faces an unwarranted foreclosure sale with a real potential of continued litigations.

42.    Whereas, apparently, it is alleged that the law firm and the loan servicer have either conspired together or were grossly negligent by initiating this action meant to deprive the Plaintiff of his home.

43.    As a result of Defendants' reckless actions, Mr. White re-alleges that he has been publically embarrassed and his property title has been slandered.

44.    Plaintiff alleges that he suffers from emotional stress and anxieties from Defendants; combined conduct.

45.    Mr. White lives in a nightmare. [Emphasis added]. ALAW swore a false and misleading oath in their Notice of Sale Under Power directly inferring that Henry Higgins resides at the subject property belonging to the Plaintiff. **Exhibit-A- Acceleration & Sales Notice From ALAW.**

46.    Further, Plaintiff believes that the acceleration notice attempts to deny him of his due process rights to contest a debt under the Federal Constitution grounds. Plaintiff believes that

5

the Constitution should give him the right to a trial by jury for any debt that exceeds $20.00. See U. S. Constitution Seventh Amendment.

47.     Further, it is alleged that upon review of the Security Deed, Covenant Sections 22, of that security instrument, in which is being purportedly enforced, should have provided Mr. White with the right to contest an acceleration and foreclosure action, altogether. That section of the instrument requires the Lender to provide a notice of advisement before a foreclosure sale is advanced. However, neither SLS nor ALAW have provided him with any such notice or advisement in accordance with the contract terms. **See Exhibit 1 Higgins Security Deed on Pages 5-6.**

48.     Further, Plaintiff believes and alleges that Defendants engaged in a multiplicity of consumer and contract torts. Mr. White believes and alleges that the Defendants have purposefully attempted to circumvent him from raising a defense against their acceleration action by using a debt obligation unattached to him but, at the same time involved his property as their asset.

49.     Wherefore, Plaintiff has no other recourse but, to petition this Honorable Court for relief.

## II.
## CAUSE OF ACTIONS UNDER THE FDCPA:

50.   Plaintiff incorporates the above Section I and he further alleges the following:

51.   Upon information and belief, on the face of the SLS's Acceleration Notice are facts that speak for themselves.

52.   Plaintiff believes and alleges that the Defendants operated within the purview of the FDCPA by their dunning letter. Further, Mr. White alleges that the two Defendants are Debt Collectors. That their Acceleration Notice would provide any least sophisticated consumer with the following understanding from the material content:

A. Defendants introduced themselves, in the acceleration notice, as debt collectors.

"*This Is an Attempt to Collect on a Debt, Any Information Obtained will be used for that purpose.*"

B. Further the notice identified SLS as a loan servicer that is collecting on behalf of another party and that SLS is not the actual owner:

"*Specialized Loan Servicing, LLC is the entity who may be contacted to negotiate, amend or modify the terms of the indebtedness*".

53. As a result, Plaintiff alleges that Defendants' notice constitutes a legal basis for determining if rather Defendants fall within the meaning of a debt collector pursuant to the Fair Debt Collection Practice Act under 15 U.S.C.§1692a(6)(F).

54. Plaintiff alleges that at all times Defendants contravened 15 U.S.C.§1692f(6)(A) where Defendants used unfair practices by unconscionable means and where there was no present right to dispossess him from his property.

55. On or about November 29, 2021, at about 2:20 PM E.S.T., Mr. White alleges that he called ALAW and spoke to their office clerk to advise the firm of a mistaken identity. That Plaintiff was the "real" property owner and the titleholder, since 2009.

56. However, the Clerk by the name of Regina Rodriguez, placed the Plaintiff on hold for a long period of time. Presumptively, the clerk talked to one of the staff attorneys. However, unpleasantly she returned and replied to him that the labt w firm was going to proceed with the sale. [**Emphasis added**].

57. Thereafter, on or about Nov. 30th, 2021, Plaintiff faxed and sent by certified overnight mail his Debt Validation Notices to both Defendants' offices. See **Exhibit –F- Debt Validation Request to SLS and Exhibit –G- Debt Validation Request to ALAW.**

58. On or about December 7th, 2021, Plaintiff received ALAW's debt validation response. See **Exhibit-M-ALAW's Dec. 7th, 2021 Response to the Debt Validation Inquiry.**

59. Plaintiff alleges that ALAW's response letter speaks for itself.

60. However, Mr. White alleges that ALAW admitted the following:

i. Mr. White is a consumer and he is not part of the debt belonging to Henry Higgins.

ii. The details concerning the debt can only be disclosed to the Plaintiff after he receives permission from Henry Higgins because he was an unauthorized party to the transaction for all intents and purposes.

61. Plaintiff alleges that ALAW stopped short of explaining how his property was attached to former loan belonging to Henry Higgins. (**Emphasis added**).

62. Further, Plaintiff alleges that SLS failed to timely respond to his debt validation notice and made no attempt at all.

63. Plaintiff alleges that ALAW is in the legal profession that summons and serves individuals. Whereas, Mr. White alleges and believes that ALAW has the power and

resources to investigate and find Henry Higgins whereabouts without negligently involving his home.

64. Accordingly, Plaintiff seeks for this court to hold both Defendants liable under the FDCPA statutes as debt collectors and for their abusive conduct.

65. Further, Plaintiff alleges that both Defendants had both a contractual and legal duty to act with reasonable care before notices were sent to his home.

66. Mr. White re-alleges that Defendants failed to perform a diligent search for Henry Higgins and their actions were unconscionable actions under the statute.

67. Whereas, Plaintiff alleges that ALAW's initial communication admittedly did not include Mr. White as a responsible party to the obligation, or as the person(s) who co-signed the instruments that would cause a foreclosure sale.

68. However, Plaintiff alleges that the Defendants implied that Mr. White had knowledge of the debt obligation, or that he was a successor-in-interests to the original borrower. It is alleged that notwithstanding Plaintiff's presumptions, some kind of material facts or discoveries should have been performed before the Defendants launched their demands for payment and acceleration to foreclose on the subject property .

69. Plaintiff alleges that Defendants had other options rather than to seek his home as a collateral for Henry Higgins. Whereas, upon belief , Georgia Law permits Creditors to sue on the promissory note.

**70.** Further, Plaintiff alleges that the Defendants have joint and individual liabilities for accuracy of the debt along with collection and billing practices. That their actions were materially misleading and fails to meet the FDCPA requirements when dealing with a consumer debt.

**71.** Mr. White alleges that Defendants failed to comply under 15 U.S.C. §1692e (2) (A) (B), (5), (10) and used unfair and predatory means in the collection of a debt. (**Emphasis supplied**).

72. Plaintiff believes and alleges that the Defendants meant to deceive Mr. White and the public about the true nature of the debt. Whereas, even though Henry Higgins was known to be the original obligor to a 2006 debt, now the public's presumption has been made that the original debt and Higgins' secured asset somehow includes and/or belongs to Calvin White, collectively.

8

73. Further, Plaintiff believes and re-alleges that the Defendants contravened the FDCPA statute in their attempt to dispossess him from his home without the legal right to do so.

74. Plaintiff re-alleges and disputes that Defendants used reasonable care in commencing a non-judicial foreclosure and failed at its legal duty to be equitable in good faith.

75. Further, Plaintiff re-affirms that he is not the successor-in- interest to Henry Higgins. Further, Mr. Higgins has made no estate transfer of his interest to Mr. White. **(Emphasis supplied).**

76. Plaintiff believes and re-alleges that the Defendants contravened the FDCPA Statute because the billing notice on its face was either false or erroneous.

77. Further, Plaintiff brings his cause of action for questions at law to determine rather if Defendants engaged in a multiplicity of false or misleading representations in their letter applicable under 15 U.S. Code § 1692e,(2)(A)(5)(12), accordingly.

78. Whereas, it is alleged that ALAW swore a materially false oath in their Notice of Sale Under Power to purport the following:

> *"To the best of the undersigned's knowledge, the person(s) in possession of the property is Henry Higgins. The property, being commonly known as 4520 Mossey Dr, Lithonia, GA 30038 in DeKalb County, will be sold as the property of Henry Higgins"*. **Exhibit-A- Acceleration & Sales Notice From ALAW.**

79. Plaintiff re-affirms and re-alleges that Henry Higgins has not owned nor resided at the property since well before or around 2009. Further, Defendants should have sought DeKalb County's Land and Tax Assessor's Records to help authenticate the present ownership. These records would have provided adequate support where the Defendants could have avoided their illegal encroachment and false oaths, altogether. See **Exhibit-B- DeKalb County Tax Assessors Statement.**

80. Plaintiff believes and alleges that the Defendants purposely and with intent contravened the accuracy of the debt, because, ALAW first inclination after being advised over the phone on Nov. 29th, 2021 that there was a bona fide error, the Defendants responded with their intent to proceed with the sale. (Emphasis Added.).

81. Plaintiff alleges that only after he sent a Final Notice to Remove his property from the Foreclosure list, then collectively the Defendants decided to postpone the sale. See

**Exhibit –H- Final Notice to Remove Property from Foreclosure List to ALAW and Exhibit-I- Final Notice to Remove Property from Foreclosure List to SLS.**

82. Further, Plaintiff believes and alleges that the Defendants contravened the FDCPA statute, because neither Defendant attempted to provide him with a true accounting of the debt nor attempted to clarify their use his property as collateral for a materially dubious debt.

83. Whereas, Plaintiff re-alleges that applicable FDCPA torts should include 15 U.S.C. § 1692f (6) (A) was contravened as a result.

84. Whereas, Plaintiff alleges that Defendants engaged in contravening §1692e by misrepresenting or by false inferences applicable under:

> "(2) The false representation of his mortgage account (was made to believe to be part and particle with Henry Higgins, or that the subject property belonged to Henry Higgins and/or that Calvin White was a tenant at sufferance because of the delinquency).
> (A) The character, amount, or legal status of any debt (where Defendants intentionally or by gross negligence misled the titleholder and the public about the debt's ownership and the collateral address belonged to the original debtor).

85. Plaintiff believes and alleges that other FDCPA statutes were contravened by the Defendants conduct jointly and severally. However, Plaintiff reserves the right to bring up other applicable charges under the act.

86. Whereas, Mr. White seeks to hold Defendants liable for engaging in unfair business practices, negligence per se and failure to execute their debt collections practices within the applicable limitations of the FDCPA statute in good faith, accordingly.

87. Plaintiff seeks to hold ALAW for their pattern of practice where the Law Firm have engaged against other unsuspecting homeowners with unsupported claims to advance a foreclosure action. *See Pamela Lloyd v. JAMES E. ALBERTELLI, P.A. d/b/a ALBERTELLI LAW*, Civil Action No. 0:20-cv-60300-RS, U.S. Dist .Ct. For the SO, Dist. of FL, where the class action members were advised, among other things:

> "..That the FDCPA would require Defendant to cease collection efforts if the consumer disputed the debt, requested validation of the debt, or requested creditor information, within the 30-day validation period, without advising the consumers that only a written notice could trigger the cease collection requirement of the FDCPA."

88. Wherefore, Plaintiff seeks relief and recovery from this Court for Defendants' reckless behavior under the FDCPA statue under 15 U.S.C. § 1692k.

### III.
### Cause of Actions Under the RESPA:

89. Plaintiff incorporates the above Sections I & II, but alleges the following relevant to the RESPA statute:

90. Upon information and belief, on the face of the SLS's Acceleration Notice are facts that speak for themselves. Plaintiff alleges that Defendants engaged in servicing an account controlled by RESPA.

91. Further, Plaintiff alleges that at all times, SLS had contractual and legal duty to act with reasonable care in servicing an account allegedly to involve Mr. White's interest. **(Emphasis supplied)**.

**92.** On or about Nov. 30, 2021, Mr. White faxed and sent by overnight a U.S. Mail, a QWR letter that contained a Notice of Error to the bona fide offices of both Defendants. The Certified Overnight U.S. mail Delivery Tracking was delivered to SLS' QWR Department. See **Exhibit –D- QWR Request to SLS and Exhibit –E- QWR Request to ALAW.**

93. Upon information and belief, Plaintiff believes and alleges that on or about Dec. 1, 2021, SLS and its legal agent, ALAW, each received their copies of the QWR letter.

94. Thereafter, SLS was obligated to respond by written acknowledgement within five (5) business days ending on or by Dec. 7, 2021. However, Plaintiff alleges that Defendant SLS failed to timely respond by either, mail, or email or fax to Mr. White with any response at all.

95. Plaintiff alleges that Defendant SLS had a legal duty to perform a reasonable investigation about the errors and concerns he raised about his property and their acceleration attempt. However, SLS failed to meet their statutory and legal duties, accordingly.

96. Whereas, Plaintiff alleges and cites the applicable RESPA law under 12 U.S.C. §2605 (6) which provides the following:

> "RESPA (12U.S.C. Section 2605) provides you certain consumer rights. If you send a notice of error or request for information (including a qualified written request) to your loan servicer regarding the servicing of your loan, your servicer must provide

11

you with a written acknowledgement within 5 days (excluding legal public holidays, Saturdays and Sundays) of receipt of your request. Not later than 30 days (excluding legal public holidays, Saturdays and Sundays) after receiving your request, your servicer must make any appropriate corrections to your account, and must provide you with a written clarification regarding any dispute. After receipt of a notice of error, your servicer may not, for 60 days, furnish adverse information to any consumer reporting agency regarding any payment that is the subject of the notice of error. <u>However, this does not prevent the servicer from initiating foreclosure if proper grounds exist under the mortgage documents.</u>"

97. Further, Plaintiff re-alleges that at all times, SLS failed to handle the mortgage account with reasonable care under RESPA and by state laws.

98. Further, Plaintiff alleges that RESPA 12 U.S.C §2605 k is applicable because SLS has failed to provide vital information requested by him to know more about the Creditor.

99. Further, Mr. White alleges that at all times Defendants' actions were directly or the proximate cause of his damages that he sustained due to Defendants predatory and negligent actions.

100. Plaintiff asserts that if it were not but for Defendants' action, then Mr. White would be dwelling peacefully in his home stress and anxiety free. (**Emphasis added**).

101. As results of the stress and duress, Plaintiff alleges that he suffers from clinical care and doctors visits for anxieties, emotional suffering, lost income, time off from work and other legal expenses to fight off this predatory attack.

102. Wherefore, Mr. White seeks to hold Defendants liable for engaging in unfair business practices, negligence per se and failure to execute the applicable RESPA statutes, accordingly.

## IV.
## THREATS TO FORECLOSE PROHIBITED UNDER RESPA & REGULATION X

103. Plaintiff incorporates the above Section III for establishing the nexus of other torts made against him in contravention of the RESPA and Regulation X statutes, respectively.

104. Further, Plaintiff alleges and believes where RESPA and Regulation X under the Code of Federal Regulations (C.F.R.) act in combination for purposes of regulating and preventing prohibited acts during the course of loan servicing. Mr. White provides the following allegations in support:

105.    Plaintiff alleges that SLS began attempting to service his property which should have been under a temporary or permanent exemption per RESPA 12 C.F.R §§ 1024.41(f) (1) (ii) (iii) and  §1024.41(g) (5), respectively.

106.    Under 12 C.F.R § 1024.41(f)(1)(ii)and (iii) is alleged to be relevant, because the prohibitions on rushing to  foreclose on a property were the first communications and intentions made  by Defendant SLS towards Mr. White's property .

107.    Whereas, Section 1024.41(f) Prohibition on foreclosure referral provides in relevant parts the following:

> "1. **Prohibited activities.** Section 1024.41(f) prohibits a servicer from making the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process under certain circumstances. Whether a document is considered the first notice or filing is determined on the basis of foreclosure procedure under the applicable State law….
>
> ii. Where foreclosure procedure does not require an action or court proceeding, such as under a power of sale, a document is considered the first notice or filing if it is the earliest document required to be recorded or published to initiate the foreclosure process."

108.    Plaintiff alleges that he received a published foreclosure notices by independent bankruptcy lawyers and by the acceleration notice involving his property. (Emphasis supplied).

109.    Further, Plaintiff alleges that Section 1024.41 (g) (5) should be applicable because the relevant RESPA statute expressly provides:

> "See Section 1024.41 (g) (5)
> **Conducting a sale prohibited.** Section 1024.41(g) prohibits a servicer from conducting a foreclosure sale, even if a person other than the servicer administers or conducts the foreclosure sale proceedings. Where a foreclosure sale is scheduled, and none of the conditions under § 1024.41(g) (1) through (3) are applicable, conduct of the sale violates § 1024.41(g)."

110.    Whereas, Plaintiff alleges that the above federal statutes prohibits a servicer like, SLS, from foreclosing  by use of its first communication was a foreclosure notice that was published without first offering the consumer either a home retention plan or a non-home retention plan option.

111.    Plaintiff alleges that SLS sought to accelerate on his home without offering any kind of loss prevention or retention plan option even if it was mistakenly thought he was party to the debt.

112. Further, Plaintiff re-alleges that SLS first communications that was sent to his home only provided him with an acceleration notice without any notice of transfer or any right to an instrument which gave the loan servicer right to use the power to sale clause upon his home.

113. It is alleged that SLS initial engagement was purely for the purposes of seeking a non-judicial foreclosure by use of either erroneous or outdated information against an outstanding debt and unjust enrichment.

114. It is alleged that on Mr. White's part, he was blameless. Plaintiff has never been a party to the mortgage transaction described in the acceleration notice and his property was transferred to new owners several times over.

115. Whereas, Plaintiff believes and re-alleges that SLS engaged in actions to breach the RESPA statutes, by making false, vague and deceptive statements through their consent that authorized Acceleration Notice upon Plaintiff's home as a first notice.

116. Further, Plaintiff re-alleges that effectively, SLS's acceleration was bi-lateral, capricious, malicious and without any provocation from the consumer.

117. As a result of the acceleration threat, Mr. White re-alleges that he received multiple intruders upon his property that disrupted his peaceful living.

**118.** Further, Plaintiff alleges that the acceleration notice was sent with the intent to deceive, misrepresent his rights in bad faith and against public policies.

119. Plaintiff re-alleges that SLS failed to provide him with any accurate and proper accounting of the alleged mortgage account that entangles his property. Wherefore, Mr. White seeks to hold Defendant SLS liable for engaging in unfair business practices, negligence per se and failure to execute the applicable the RESPA statutes in good faith, accordingly.

120. Further, it is re-alleged that if it were not but for Defendants' tortuous acts, then Mr. White peacefully enjoying his home stress and anxiety free.

121. Further, SLS engaged in either a premature or illegal exercise under the power of sale by the Security Deed (acceleration covenant) which resulted in damages that would not have occurred but for those breaches and negligence.

122. Mr. White re-alleges that at all times SLS's actions were directly or the proximate cause of his damages sustained by SLS under the applicable consumer laws.

123. Thereafter, Plaintiff alleges that SLS retained foreclosure attorneys, ALAW for purposes of threatening to conduct a non-judicial action against his property in contravention to 12

14

C.F.R. § 1024.35 (b) (9) (10), C.F.R § 1024.41(f) (1) (ii) (iii) and 12 C.F.R. § 1024.41(g) (5), respectively.

## V.
## QWR RESPA ALLEGATIONS

124. Plaintiff incorporates the above Sections III and IV and further provides the following:

125. In specific, Plaintiff re-alleges SLS failure to administer 12 U.S.C.§ 2605k(1) (A) and (2) in the relevant parts below:

126. Plaintiff alleges that on or about November 30th, 2021, Plaintiff provided SLS with his Qualified Written Request (QWR). Thereafter, SLS failed to respond by acknowledgement to his QWR within five (5) business days as required under the RESPA statute.

127. Plaintiff re-alleges that SLS has failed to timely and sufficiently provide Plaintiff with the specific information about the true legal status of CWABS, Inc. Mortgage-Backed Pass-Through Certificates Series 2007-1 ("Asset Trust"), the purported Note holder.

128. Further, Plaintiff alleges SLS has not offered a complete "written explanation" stating the "reason or reasons for [its] determination about his legal status and standing with the purported Mortgage Asset Trust that leads to an attempted foreclosure on his home.

`129. Thus, Plaintiff alleges that SLS failed to comply with 12 U.S.C. § 2605(e) (2) (B) and 12 C.F.R. §1024.35(e) (1) (i) (A) (B), respectively.

130. Whereas, Plaintiff alleges that he sought pertinent information where he could communicate directly with the "Asset Trust", but SLS failed to respond in a timely manner.

131. Plaintiff alleges that he questioned if rather the "Asset Trust" operates and maintains itself within a legal jurisdiction established by statutory laws.

132. Further, among other things, Plaintiff believes and alleges that RESPA gives him the right to know rather if the party that seeks to seize his property is a bona fide legal entity. See **Exhibit –D- QWR Request with Notice of Error to SLS.**

133. Plaintiff re-alleges that SLS failed to timely respond to his QWR and Notice of Error within the time required under the statutes. Plaintiff re-alleges and believes that SLS contravened RESPA under 12 U.S.C. §2605 e (1) (A) and 12 CFR § 1024.35(d), respectively.

134. Plaintiff has not received any response by mail, email or fax within five (5) and no responses within seven (7) business days as required under the RESPA and CFR statutes. accordingly.

135. Wherefore, Plaintiff alleges that he seeks to prosecute SLS for each RESPA and CFR code violation in this Honorable Court, accordingly.

## VI.
## CAUSE OF ACTIONS UNDER BREACH OF CONTRACT AND BREACH OF GOOD FAITH AND FAIR DEALINGS

136. Plaintiff incorporates the above Sections and further alleges that this action is ripe for consideration conduct made by SLS to breach contractual provisions on acceleration provisions. Plaintiff enumerates specific conduct for review in the following:

**Security Deed Breaches:**

137. Plaintiff alleges that SLS breached Covenant Section (22) of the Security Deed. See **Exhibit-1- Henry Higgins Security Deed** in relevant parts.

138. For this action, Plaintiff seeks a Declaratory Judgment that although Mr. White is not party to the contract, the Defendants appear to treat him as though the Plaintiff is the successor-in-interests to Henry Higgins per Section 18 of the Security Instrument. Materially, it is re-alleged that Mr. White's property was joined unlawfully into the acceleration process where he must defend against such tort.

139. Further, Plaintiff re-alleges that SLS's acceleration notice breached Covenant Section 22 of the Security Deed (**See Covenant Section 22, pages 5-7**), in relevant parts of the section provides :

"….The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale……"

140. Plaintiff re-alleges with belief that SLS gave him acceleration notice indicating that he could lose his home while presumptively; Mr. White was lumped into the enforcement of a security instrument as the "successor-in-interests" to Henry Higgins. (**Emphasis supplied**).

141. If true and Mr. White believes this was a true tortuous act, then, thereafter SLS did not intend to give the borrower nor himself (or the alleged successor-in-interests) any notice stating that he "had the right to contest the acceleration or to bring a legal action to assert the non-existence of a default or any other defense…" (**Emphasis added**).

16

142. In Georgia, Plaintiff believes that failure to advise in accordance with Section 22 of a Security Deed is unlawful under OCGA §23-2-114 which provides:

"Powers of sale -- To be construed strictly; manner

Powers of sale in deeds of trust, mortgages, and other instruments shall be strictly construed and shall be fairly exercised."

143. Whereas, Plaintiff alleges that he received the acceleration notice from SLS and ALAW with their clear intent to deceive and misrepresent the debt and the facts relevant to who possessed the property. Mr. White re-alleges that Defendants engaged in bad faith and for purposes of unjust enrichment.

144. Plaintiff seeks a declaration that Defendants actions were without just cause. Among other things, Mr. White re-alleges that he was blameless and caused no harm nor injury to Defendants.

145. Mr. White re-alleges that at all times Defendants' actions were directly or the proximate cause of his damages he sustained.

146. Plaintiff re-alleges that if it were not but for Defendants' action, then Mr. White would be dwelling peacefully in his home stress and anxiety free. (**Emphasis added**).

147. Plaintiff instead re-alleges that he suffers clinical and doctors visits for anxieties, emotional suffering, lost income, and legal expenses to fight off this predatory attack.

## VII.
## CAUSE OF ACTION FOR BREACH OF GRMA UNDER GEORGIA LAW

148. Plaintiff incorporates the above sections II, III, IV and VI to further provide the nexus for causes of action under Georgia's consumer mortgage law:

149. Plaintiff alleges that SLS is a registered loan servicer in the state of Georgia and it is bound under Georgia Residential Mortgage Act (GRMA) statutes, accordingly.

150. Plaintiff alleges that the GRMA is public policy that is intended to regulate and protect consumers in the mortgage industry from any misconduct by mortgage lenders, loan servicers and brokers. Additionally, the Act requires registrants to comply with engaging in the implied covenant of good faith and deal fairly under the law. Whereas, the GRMA expressly provides for duly licensed mortgage registrants to deal in good faith and fair dealings under O.C.G.A. §7-1-1013(6).

151. Whereas, it is alleged that the GRMA provides a private right of action for consumer as remedies from abusive conduct under the statute under O.C.G.A. §7-1-1020.

152. Further Plaintiff re-alleges that SLS negligently or intentionally misrepresented material facts about the mortgage account during the course that Defendants sought to accelerate and foreclose upon his property.

153. Further, Plaintiff re-alleges that the Notice of Sale Under Power falsely asserted that Henry Higgins was in possession of the subject property. (Emphasis Added).

154. Plaintiff re-alleges that the GRMA is strictly intolerant with any misrepresentations made to consumers under the act.

155. Further, Plaintiff re-alleges that at all times, Defendants, jointly, engaged in tortuous acts in bad faith.

156. Plaintiff re- alleges that SLS engaged in fraud upon him in connection with the acceleration notice, ab initio.

157. Further Plaintiff re-alleges that he was reliant on SLS's acceleration letter and foreclosure notice through ALAW to have been truthful and ethical.

158. As result of SLS's foregoing conduct, Mr. White alleges that SLS engaged in contravening GRMA's good faith and fair dealings statute.

159. Further, Plaintiff re-alleges that SLS failed to provide material facts. SLS failed to disclose with specificity or to use candor, about the rightful parties liable Acceleration Notice. It is alleged that SLS failed to advise Plaintiff if he was liable for the default that allegedly secured his property.

160. As a result of SLS's failure to disclose, Mr. White re-alleges that SLS engaged in contravening GRMA's misrepresentation statute along with good faith and fair dealings and dealings. See under O.C.G.A.§7-1-1013(6)

161. Plaintiff re-alleges that he seeks to prosecute the SLS under the GRMA, accordingly.

162. Further, Plaintiff re-alleges that he seeks to prosecute SLS for specific applicable sections of the GRMA which lies under OCGA §7-1-1013(1) which provides;

"Georgia Residential Mortgage Act, OCGA § 7-1-1000 et seq. (GRMA),prohibits any person transacting a mortgage business from, among other things, "pursu[ing] a course of misrepresentation by use of fraudulent or unauthorized documents or other means to . . . anyone." OCGA § 7-1-1013 (1)."

18

163. Mr. White re-alleges that at all times SLS's actions were directly or the proximate cause of his damages as he seeks to prevail under Georgia's residential mortgage laws.

**VIII.**
**BREACH OF LEGAL DUTY PURSUANT TO O.C.G.A. § 51-1-6 AND THE PRIVATE RIGHT OF ACTION TO SEEK DAMAGES UNDER O.C.G.A. § 51-1-8, ACCORDINGLY.**

**<u>Cause of Action for Breach of Legal Duty:</u>**

164. Plaintiff incorporates the above foregoing section VII and further provides the following nexus related to Defendants breach of legal duties:

165. Further, Plaintiff alleges and gives this Court judicial notice of Georgia's state laws on breach of legal duty torts along with the right of action which are applicable when any state or federal law is violated, as opined below:

"To prevail on a claim for negligence under Georgia common law, a plaintiff must establish four elements: duty, breach of duty, proximate cause, and actual damage."
In Georgia, negligence per se arises when a defendant violates a statute or ordinance, satisfying, as a matter of law, the first two elements of a negligence claim. *Hubbard v. Department of Transp.*, 256 Ga.App. 342, 349, 568 S.E.2d 559, 566 (2002). Once establishing these first two elements through negligence per se, the plaintiff must go on to demonstrate that the defendant's statutory breach was the proximate cause of the plaintiff's injury. Id. The same result is reached through application of section 51-1-6, which provides: "When the law requires a person to perform an act for the benefit of another or to refrain from doing an act which may injure another, although no cause of action is given in express terms, the injured party may recover for breach of such legal duty if he suffers damage thereby."
....O.C.G.A. § 51-1-6. "Private duties may arise from statute or from relations created by contract, express or implied. The violation of a private duty, accompanied by `damage, shall give a right of action." O.C.G.A. § 51-1-8."

166. Plaintiff re-alleges that SLS engaged in misconduct by deceit, breaches of implied agreements, accounting practices along with breached legal and private duties, accordingly.

167. Whereas, Mr. White re-alleges that SLS demanded payments or an acceleration to a contract that he was not privy to it but where his property was used as leverage to satisfy the outstanding debt.

168. Plaintiff re-alleges that Defendants intended to foreclose on his property for unjust enrichment. Defendant's acceleration letter contains facts that speak for themselves. See **Exhibit-A- Acceleration & Sale Notice From ALAW.**

169. Further, Plaintiff re-alleges for purposes to show that SLS failed at its legal duty under the FDCPA statute Section 1692e(5) and other sections of that act, which expressly provides and is widely held by the Courts in the following:

"Section 1692e of the FDCPA prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt.

170. Further, Plaintiff re-alleges that SLS failed at its legal duty to clearly provide who were the owners of the debt obligation, how his property was entangled as a collateral and the accurate amount due in accordance with Regulation X and RESPA 12 U.S.C.§2601et seq., respectively

171. Plaintiff re-alleges that SLS had a legal duty, while servicing in the administration of the loan, to refrain from misrepresentations nor conceal nor caused the concealment of material factors, terms, or conditions that Mr. White was not a party to the original mortgage account and his property should not have been placed at foreclosure risk. Whereby, Plaintiff re-alleges that SLS failed at its legal duties under the GRMA per O.C.G.A. §7-1-1013(2).

172. Plaintiff re-alleges that SLS failed at its legal duties for each contravention of a prohibited act under the statutory laws relevant to RESPA, FDCPA and the GRMA as fully cited herein above.

173. Wherefore, Plaintiff seeks to prosecute SLS under GA Code (O.C.G.A.) §51-1-6 for every incident where SLS failed to comply with either a federal or state law, collectively and severally.

174. Plaintiff seeks to pursue his legal remedies and private right of action under O.C.G.A. §51-1-8.

175. Wherefore, Plaintiff alleges that he seeks to pursue civil damage claims and that Defendants were at all times, the direct or the proximate cause of his damages sustained by Defendants' breaches of legal duties, jointly and severally.

## IX.
## SLANDER OF TITLE

176. Plaintiff incorporates the relevant parts in Sections II, III and IV to show by the nexus between Defendants actions and Georgia's recovery law for Slander of Title by intentional and reckless torts.

177. Plaintiff re-alleges that on or about October 27, 2021, Mr. Kareem received from SLS' third-party attorneys, ALAW, a final notice of acceleration and to start a non-judicial foreclosure sale of his property. (See **Exhibit-A- Acceleration & Sale  Notice From ALAW** ).

178. It is alleged that the intent by Defendants collective actions were clear that on December 7, 2021 a publically held auction would have occurred to dispossess the Plaintiff from his property.

179. However, Plaintiff alleges that the sale was based on false assumptions and unwarranted reasons as follows below:

1.     SLS never provided a true validated debt for an acceleration to occur against his home. Particularly, SLS failed to show where Mr. White failed to pay any mortgage payment that would give the Defendants the right to dispossess his property.

2.      Plaintiff alleges that the Loan Servicer used flawed data or failed to conduct an investigation and induced the law firm to act upon Mr. White's property.

3.     Mr. White  re-alleges that SLS's  Acceleration Notice contained material misrepresentations  in violation of the FDCPA, RESPA and GRMA codes.

4.     Further, it is alleged that ALAW swore a materially false oath in their Notice Of Sale Under Power to purport the following:

> "*To the best of the undersigned's knowledge, the person(s) in possession of the property is* <u>*Henry Higgins*</u>*. The property, being commonly known as 4520 Mossey Dr, Lithonia, GA 30038 in DeKalb County, will be sold as the property of Henry Higgins*".

5. Plaintiff re-alleges that Henry Higgins has not held any interest in the property since about 2009 in accordance to County Land and Tax Assessor's records.

6. Further, Plaintiff re-alleges that he was not given the requisite notice requirements under Sections (18) and  (22) of  the Security Deed, respectively,  therefore, he pursues contract breaches and seeks a declaration that SLS had no right to enforce the security instrument  against his property interest, accordingly.

**7.** Mr. White re- alleges that at all times, Defendants acted maliciously, recklessly and with willful negligence to engage in a foreclosure action against he and his interest.

180. Further, it is alleged these legal and contractual breaches could have been cured before the Law Firm published the foreclosure sale in the legal organ newspaper in Gwinnett County. On or about November 29th, 2021, Plaintiff offered Defendants the opportunity to abate their action before litigation would commence. However, Defendants were unresponsive, negligent of their legal duties and callously failed to perform any investigation, accordingly.

181. Further, Mr. Kareem alleges that he was exposed to more than 500,000 subscribers of the newspaper with a negative exposure that foreclosure sale was pending against his home without any legal or contractual justifications.

182. As a result, it is re-alleged that uninvited brokers, buyers and unknown persons encroached upon his property to make unsolicited inquiries about his property.

183. Plaintiff re-alleges that he was publically damaged, embarrassed and he suffered from trespassers encroaching on his property, mental anguish, restlessness, high blood pressure and other health ailments.

184. Furthermore, Plaintiff re-alleges that SLS failed to act under the implied covenant of good faith and fair dealings. Further, Mr. Kareem re-alleges that SLS and its agents failed at their private and legal duties to act with reasonable care.

185. As a result, Plaintiff seeks a premature- attempted-wrongful foreclosure under Georgia's equitable law, OCGA §23-2-114and claims for slander of title, respectively..

186. Whereas, Plaintiff alleges that Defendants failed to give adequate notice to Calvin White in accordance with Georgia's foreclosure statutes. This includes the fact that Defendants jointly and severally failed to do adequate land record searches before moving against Plaintiff's home.

187. Plaintiff alleges that he is entitled to pursue his claim herein, because Georgia law can been enforced by this Court.

188. The applicable law for slander of title is expressed below:

"The elements of proof for a slander of title claim are as follows:

The owner of property may bring an action for "libelous or slanderous words which falsely

22

or maliciously impugn his title if any damage accrues to him there from." OCGA § 51-9-11. "In order to sustain an action of this kind, the plaintiff must allege and prove the uttering and publishing of the slanderous words; that they were false; that they were malicious; that he sustained special damage thereby; and that he possessed an estate in the property slandered."

189. Further, Plaintiff re-alleges that Defendants were at all times, the direct or the proximate cause of his damages sustained by their slander torts.

190. Plaintiff seeks recovery at trial by equitable or at law for recovery of sustained damages coupled with private and legal duty breaches, accordingly.

## X.
## COUNTS FOR DAMAGES

191. Plaintiff incorporates the above sections II through IX and further provides the following Counts for Damages;

192. Mr. White alleges and supports where he was damaged by both Defendants' bilateral administration of the Acceleration and Sale Notice Under Power that he received for dispossessing him of his property.

193. **Count I.** Plaintiff seeks damages under the FDCPA for each known violation applicable under the statute enumerated and adjudicated jointly and severally against the Defendants:

194. Misrepresentation of the character of the alleged debt.

195. Misrepresentation of the amount owed.

196. Misrepresentation of the parties to the debt.

197. Misrepresentation of the status of the underlying debt.

198. Misrepresentation of the owners of the collateral interests to the debt.

199. Failure to give an exact accounting.

200. Provided deceitful and false reasons to accelerate and foreclose.

201. Provided deceitful acceleration notices that implied or inferred that no payments were received from Mr. White in which he caused or participated in a loan default.

202. Materially threaten to seize Plaintiff 's property without legal justification under the FDCPA code or by applicable law.

203. Misrepresentation by false billing statements and/or practices.

204. Damages for pattern of practice by ALAW to engage in predatory unsupported claims to foreclose.

23

205. Attorney fees to be paid under the FDCPA statute.

206. All other counts and damages under the FDCPA statute to be discovered at trial.

207. **Count II.** Plaintiff seeks damages under the RESPA and Regulation X for each known violation applicable under those statutes enumerated and adjudicated jointly and severally.

208. Damage award for failure to provide Transfer of Servicing Notice to initiate servicing activities with respect to the property and debt obligation.

209. Damage award for failure to acknowledge QWR within five (5) business days.

210. Damage award for failure to acknowledge Notice of Error within seven (7) business days.

211. Damage award for failure to provide information about the Creditor.

212. Damage award for failure to provide an investigation in a reply to notice of error.

213. Damage award for failure to provide timely responses for each information requested but, not received under a QWR and Notice of Error requirements, accordingly.

214. Damage award for each threat made to foreclose on property without providing home retention plan or option.

215. Damage award for sending a first communication for the purpose of foreclosure by a non-judicial process under the power of sale per 12 CFR Section 1024.41(f).

216. Any other failures permitted under the RESPA statute to be determined at trial for damage awards.

217. **Count III.** Breach of Legal Duties under the FDCPA Statute violations asserted herein above with awards to be determined at trial including damages for punitive and compensatory awards.

218. **Count IV.** Breach of Legal Duties arising from the RESPA Statute violations asserted herein above with awards to be determined at trial including punitive and compensatory damage awards.

219. **Count V.** Damages under GRMA for misrepresentations and implied deceit found in the acceleration notice asserted herein above with awards to be determined at trial.

220. Damages related to SLS failure to disclose if Mr. White was linked to the underlying mortgage transaction by a former homeowner of 2006.

221. **Count VI.** Other damages to be determined at trial including damages for punitive and compensatory awards.

222. **Count VI.** Damages for actual and Breach of Legal Duty arising from the Slander of Title. Recovery for violations to be determined at trial including damages for punitive and compensatory awards.

223. **Count VII.** Breach of Good Faith and Fair Dealings damages arising from the GRMA and/or by the purported security instrument to be determined at trial to include punitive and compensatory awards.

224. **Count VIII.** Award of Attorney fees for this action.

225. **Count IX.** Award of all costs for emotional, health costs recovery, legal research, slander of title and all other damages induced by Defendants' torts.

226. **Count X.** Damages for Breach of Legal Duty arising from Defendant's failure to engage in good faith and fair dealings applicable under Georgia's Contract law. Plaintiff seeks full damage awards to be determined at trial.

227. **Count XI.** Wrongful foreclosure claim under Georgia's equitable law OCGA Section 23-2-114.

228. **Count XI.** Jury or by the trier of fact to award damages deemed appropriate for the unconscionable treatment of a Senior Citizen.

## XI.
## SUMMARY AND PETITION FOR RELIEF

229. Plaintiff petitions this Court for relief and awards on all sustained damages raised herein for multiple counts of statutory violations, equitable awards, punitive and compensatory damages, accordingly.

230. Plaintiff seeks $650,000.00 in damages derived from his claims for relief under statutory, contract breaches and consumer tort laws, as fully enumerated herein.

231. Further, Plaintiff seeks an additional recovery of $75,000.00 for actual damages that includes pain, suffering, and slander, punitive and compensatory awards. As a result of Defendant's torts, Mr. White makes doctor visits to treat his anxieties and elevated blood pressure. (**Emphasis added**).

232. Whereas, Mr. White alleges that he received numerous unsolicited offers which constitutes an invasion upon his privacy and property. The volume of such threat came from the acceleration letter and publication in legal organs that directly caused the slander by

publication. Defendants have caused Plaintiff physical, mental anguish and tarnished his reputation.

233. Plaintiff seeks full recovery from attorney fees as Plaintiff intends to find counsel for entering into this action.

234. Plaintiff seeks a permanent injunction to prohibit Defendants in engaging in any attempts to seize his property by foreclosure or other means.

235. Plaintiff sayeth naught more.

236. I declare under penalty of perjury that I am the plaintiff in this action, that I have read this complaint, and that the information in this complaint is true and correct. *See* 28 U.S.C. § 1746; 18 U.S.C. § 1621.

237. Under Federal Rule of Civil Procedure 11, by signing below, I also certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending or modifying existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

*Calvin White /s/*
Calvin White, Plaintiff and Title Holder
December 13th, 2021

Certificate of Service

I, the undersigned, hereby certify that I have  on or about this date served the opposing party (ies) with summons and a copy of the Complaint by U.S. Postal Mail or by process server to person(s) at the following:

Clerk of the Court
U.S. District Court for the District of Colorado
901 19th Street,
Room A105
Denver, CO 80294-3589
 Tel.: (303) 844-3433
Email:

United Agent Group, Inc.
Registered Agent on Behalf of Specialized Loan Servicing, LLC
2895 Gordy Parkway, 1st Floor
Marietta, GA 30066

James Albertelli, E.
Registered Agent on Behalf of James E. Albertelli, PA
100 Galleria Parkway, Suite 960
Atlanta, GA 30039

Respectfully executed on December 13th, 2021

CALVIN WHITE/S/
Calvin White, pro se
4520 Mossey Drive
Lithonia, GA 30038
Tel: 470-364-8252
Email: cw.fi.inc@gmail.com