IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-03390-PAB-KLM

CALVIN L. WHITE,

     Plaintiff,

v.

JAMES E. ALBERTELLI, PA, doing business as ALAW, and
SPECIALIZED LOAN SERVICING, LLC,

     Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

     This matter is before the Court on Defendants' **Joint Motion to Transfer Venue** [#8][1] (the "Motion"). Plaintiff, who proceeds as a pro se litigant,[2] filed a Response [#20] in opposition to the Motion [#8], and Defendants filed a Reply [#21]. The Motion [#8] has been referred to the undersigned for a recommendation regarding disposition pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C.COLO.LCivR 72.1(c). *See* [#9]. The Court has reviewed the Motion, Response, Reply, the entire case file, and the applicable law, and

---

[1] "[#8]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Recommendation.

[2] The Court must construe liberally the filings of pro se litigants. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be the pro se litigant's advocate, nor should the Court "supply additional factual allegations to round out [the pro se litigant's] complaint or construct a legal theory on [his] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997). (citing *Hall*, 935 F.2d at 1110). In addition, pro se litigants must follow the same procedural rules that govern other litigants. *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

is sufficiently advised in the premises. For the reasons set forth below, the Court respectfully **RECOMMENDS** that the Motion [#8] be **GRANTED**.

## I. Background

The well-pled facts of the Complaint [#1] are construed in a light most favorable to Plaintiff. *Barnes v. Harris*, 783 F.3d 1185, 1191-92 (10th Cir. 2015). Plaintiff is a citizen of the State of Georgia and resides in Georgia. *Compl.* [#1] ¶ 5. Defendant James E. Albertelli, PA d/b/a ALAW ("ALAW") is a law firm with its principal place of business in Tampa, Florida, and an office in Atlanta, Georgia. *Id.* ¶¶ 4, 11. Defendant Specialized Loan Servicing, LLC ("SLS") is a Colorado corporation with its principal place of business in Colorado. *Id.* ¶ 3. On December 17, 2021, Plaintiff filed a lawsuit against Defendants seeking damages under the federal Fair Debt Collection Practices Act ("FDCPA"), the federal Real Estate Settlement Procedures Act ("RESPA"), the Georgia Residential Mortgage Act ("GRMA"), and various other Georgia statutory and common law claims based on torts such as slander of title. *Id.* ¶¶ 50-102, 148-90.

This case arose from a foreclosure-related dispute about real property located at 4520 Mossey Drive, Lithonia, DeKalb County, Georgia 30038 (the "Property"), near Atlanta. The priority of the liens on the Property has already been adjudicated by the Superior Court of DeKalb County in the State of Georgia through a default judgment entered against Plaintiff in Civil Action No. 19CV5952, *The Bank of New York Mellon f/k/a The Bank of New York, as Trustee for the Benefit of Certificate Holders of the CWABS, Inc Asset-Backed Certificate Series 2007-1 v. Bank of America., N.A., Calvin White, Andre Page, and Henry Higgins.* Ex. 1, *Default Judgment and Order as to Calvin White, Andre*

–2–

*Page, and Henry Higgins Only* [#8-1] at 6.  On October 27, 2021, Defendant ALAW sent a letter to the Property titled "Notice of Foreclosure Sale."  *Compl.* [#1] ¶¶ 13-14.  Plaintiff believes the letter initiated a debt collection regarding a debt unknown to him, which threatened his ownership of the Property.  *Id.* ¶¶ 13, 16-17.  Due to the foreclosure and its publication in a newspaper that has more than 500,000 subscribers, Plaintiff alleges he began to receive solicitations from bankruptcy attorneys, and uninvited brokers and buyers encroached on his Georgia residence.  *Id.* ¶¶ 181-82.  Plaintiff seeks damages on twelve counts based on various federal and Georgia statutes and Georgia common law. *Id.* ¶¶ 193-228.

In response to the Complaint [#1], Defendants filed the present Motion [#8] seeking transfer to the Northern District of Georgia, Atlanta Division, pursuant to 28 U.S.C § 1404(a).  Defendants argue that the Northern District of Georgia, Atlanta Division, is a more appropriate venue for this action.  *Motion* [#8] at 2.

## II.  Standard of Review

Pursuant to § 1404(a), a District Court may transfer any civil action to any other district or division where it might have been brought or to any district division to which all parties have consented for the convenience of the parties and witnesses and in the interest of justice.  28 U.S.C. § 1404(a).  "§ 1404(a) is intended to place discretion in the District Court to adjudicate motions for transfer according to an 'individualized case-by-case consideration of convenience and fairness.'"  *Stewart Org. v. Ricoh Cor.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).  A court's assessment of convenience under § 1404(a) is discretionary.  *Galvin v. McCarthy*, 545 F.

–3–

Supp. 2d 1176, 1181 (D. Colo. 2008).  However, unless the balance is strongly in favor of the movant, the plaintiff's choice of forum should rarely be disturbed.  *Id*.  A party moving to transfer a case pursuant to § 1404(a) bears the burden of establishing that the existing forum is inconvenient.  *Chrysler Credit Corp. v. Cnty. Chrysler, Inc.*, 928 F. 2d 1509, 1516 (10th Cir. 1991).

## III.  Analysis

When considering a motion to transfer, factors that the Court may consider include the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to ensure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; the relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and all other considerations of a practical nature that may make a trial easy, expeditious, and economical.  *Id.*; *Tex. Gulf Sulphur Co. v. Ritter*, 371 F.2d 145, 147 (10th Cir. 1967).

### A.    The Relative Advantages and Obstacles to a Fair Trial

Plaintiff's primary argument is that the District of Colorado offers additional assistance for pro se litigants compared to the Northern District of Georgia.  *Response* [#20] ¶ 15(xi).  Plaintiff argues that without the additional assistance available here for pro se litigants, Plaintiff might be at a disadvantage.  *Response* [#20] ¶ 15(xii).  This argument, if construed most favorably to Plaintiff, could be incorporated into the "relative advantages

–4–

and obstacles to a fair trial" factor.  If Plaintiff, without the additional assistance offered to pro se litigants in the District of Colorado, could not adequately represent himself and thereby unintentionally created obstacles to a fair trial, this factor would weigh against transfer.  However, in Order [#25], the Court noted that Plaintiff has demonstrated his ability to frame facts and state claims, as well as that the legal issues in this case are not overly complex, novel, or particularly difficult to state or analyze.  *Order* [#25] at 2-3. Therefore, the Court denied Plaintiff's Motion of Appointment of Counsel, which indicates, at least preliminarily, that Plaintiff appears capable of representing himself.  *Id.* at 3. Moreover, it is impossible to ascertain the difference that the availability of limited pro se assistance would make to Plaintiff's case.  In light of this, the Court cannot conclude that Plaintiff has a better chance of receiving a fair trial in the District of Colorado.

Thus, the Court finds that this factor is neutral.

## B.   The Accessibility of Witnesses and Other Sources of Proof

The convenience of the witnesses is the most important factor in deciding a motion under § 1404(a).  *Emp'rs Mut. Cas. Co.*, 618 F.3d at 1169.  "To demonstrate inconvenience, the movant must identify the witnesses and their locations; 'indicate the quality or materiality of the testimony'; and 'show that any such witnesses were unwilling to come to trial . . . [,] that deposition testimony would be unsatisfactory[,] or that the use of compulsory process would be necessary.'"  *Id.* (citing *Cook v. Atchison, Topeka & Santa Fe Ry. Co.*, 816 F. Supp. 667, 669 (D. Kan. 1993)); *see also Palace Expl. Co. v. Petroleum Dev. Co.*, 316 F.3d 1110 (10th Cir. 2003).

–5–

Plaintiff argues that some of the witnesses and evidence from Defendant SLS are located in Colorado. *Response* [#20] ¶ 15(iv)-(v). Although Plaintiff has not identified any specific witnesses or evidence that is located in Colorado, it is reasonable for the Court to infer that, because SLS is a Colorado corporation and has its principal place of business in Colorado, some relevant witnesses and evidence are likely located in Colorado. However, Defendant SLS has consented to proceed in the Northern District of Georgia and affirmatively agrees that Defendant SLS will not withhold any documents on the basis of location. *Motion* [#8] at 6. Similarly, Defendant ALAW, although operating primarily out of its Florida office, has an office in Georgia and submits that all of its documents in regard to Plaintiff's claims are located in the State of Georgia. *Id.* at 7. Even if witnesses or evidence from Defendant ALAW are required to travel, Georgia is much closer to Florida than Colorado is—making the Northern District of Georgia a more convenient venue for Defendant ALAW.

Furthermore, most of the relevant witnesses and evidence in regard to Plaintiff's claims are located in the Northern District of Georgia. First, Plaintiff, one of the most important witnesses, is located in the Northern District of Georgia. *Compl.* [#1] ¶ 5. In terms of the need to travel during the continuing pandemic, it is clear that it would be more convenient for Plaintiff to litigate in the Northern District of Georgia than in the District of Colorado. Second, the witnesses and evidence for Plaintiff's multiple tort-based claims under Georgia law are mostly located in Georgia. To adjudicate such claims, necessary witnesses and evidence, related to the newspaper publications, the brokers, and attorney solicitations made in Georgia, are more accessible in the Northern District of Georgia. *Id.*

–6–

¶¶ 19, 182.  Lastly, almost all the witnesses and evidence in regards to the title of the Property are located in Georgia, such as the liens, the deeds, and the Georgia state court orders.  *See, e.g., Ex. 1, Default Judgment and Order as to Calvin White, Andre Page, and Henry Higgins Only* [#8-1].  Plaintiff mentions that video conferences could be used in accessing witnesses.  This argument, however, ignores both the logistical difficulties that can occur with video testimony, as well as its inferiority for purpose of evaluating credibility.

Therefore, the Court finds that this factor weighs in favor of transfer.

**C.      Cost of Litigation**

Because Defendant ALAW submits that all documents in regard to this case are located in Georgia, Defendant ALAW argues, and the Court agrees, that it would be more costly to bring witnesses and evidence to the District of Colorado than to the Northern District of Georgia.  Even if Defendant ALAW's witnesses are required to travel, Georgia is much closer to Florida than Colorado is.  Therefore, transferring this case to the Northern District of Georgia would lower the cost of litigation.

Additionally, although Plaintiff has not directly addressed the cost of litigation in his Response [#20], Plaintiff, in his Motion for Appointment of Counsel [#22], mentions his limited financial situation.  Given that Plaintiff resides in Georgia, it would cost more for Plaintiff to travel to Colorado and to litigate this case in the District of Colorado.  Thus, transferring this case to the Northern District of Georgia would reduce the cost of litigation for both parties.

Therefore, the Court finds that this factor weighs in favor of transfer.

**D.      Difficulties that May Arise from Congested Dockets**

When evaluating the difficulties of court congestion, the most relevant statistics are the median time from filing to disposition, median time from filing to trial, pending cases per judge, and the average weighted filings per judge. *Emp'rs Mut. Cas. Co.*, 618 F.3d at 1169. Defendants acknowledge that the Northern District of Georgia has more case filings than the District of Colorado. *Motion* [#8] at 12 (citing *Fed. Ct. Mgmt. Statistics*, ADMIN. OFFICE OF THE U.S. CTS., https://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2021/09/30-3.) However, notwithstanding the differences, the median time from filing a case to disposition in the Northern District of Georgia is approximately two months shorter than in the District of Colorado, and the median time from filling a civil case to trial is also approximately two months shorter. *Id.* Based on these statistics, although the Northern District of Georgia has more case filings, this case may be resolved more quickly in the Northern District of Georgia.

Therefore, the Court finds that this factor weighs slightly in favor of transfer.

**E.      The Applicable Law Governing the Dispute**

Courts prefer an action to be adjudicated by a court sitting in the state of the governing substantive law. *Emp'rs Mut. Cas. Co.*, 618 F.3d at 1169. Here, the Northern District of Georgia would be in a better position to adjudicate this case because: (1) RESPA requires actions to be filed in the district where the property is located or the alleged violation has occurred; (2) multiple counts of Plaintiff's claims rely on Georgia statutes and common laws; and (3) a Georgia state court has already adjudicated the priority of the liens on the Property.

First, RESPA requires an action to be filed in the district where the property is located or the alleged violation has occurred.  12 U.S.C. § 2614.  According to RESPA: "any action pursuant to the provisions of Section 2605, 2607, or 2608 of this title may be brought in the United States District Court or any competent jurisdiction, for the district in which the property is located or where the violation is alleged to have occurred . . . ."  *Id*. Here, the Property is located in Georgia and the asserted violation took place in Georgia. *Compl.* [#1] ¶¶ 5, 50-102.  Therefore, with respect to the RESPA claim, the Northern District of Georgia is the proper venue.  *See Sicienski v. Saxon Mortg. Servs., Inc.*, No. 3:07cv234, 2007 WL 2071711, at *1 (E.D. Va. July 11, 2007) (holding that, under RESPA, venue was improper in the Richmond Division of the United States District Court for the Eastern Division of Virginia, but proper in the Alexandria Division because the property was located in the Alexandria Division, and the plaintiff did not contend that the violation at issue occurred in the Richmond Division); *Webb v. Chase Manhattan Mortg. Corp.*, No. 04-CV-07940(GBD), 2005 WL 106896, at *1 (S.D.N.Y. Jan. 18, 2005) (holding that, under RESPA, venue was improper in the Southern District of New York because the complaint clearly alleged that the subject properties were located in Tennessee and Colorado, and wrongful conduct was not alleged to have occurred in New York).

Second, Plaintiff's claims rely on the statutes and common laws of the State of Georgia.  "In a diversity action, courts prefer the action to be adjudicated by a court sitting in the state that provides the governing substantive law."  *Emp'rs Mut. Cas. Co.*, 618 F.3d at 1169.  Here, the majority of Plaintiff's claims are based on Georgia statutes and common laws, such as the GRMA and Georgia tort law.  Therefore, because Georgia

provides the governing substantive law for many of Plaintiff's claims, the Northern District of Georgia would be in a better position to apply Georgia state law.

Third, a Georgia state court has adjudicated the priority of the liens on the Property. "When the merits of an action are unique to a particular locale, courts favor adjudication by a court sitting in that locale." *Id.* at 1170. Here, the priority of the liens has already been adjudicated by the Superior Court of DeKalb County in the State of Georgia. *See Ex. 1, Default Judgment and Order as to Calvin White, Andre Page, and Henry Higgins Only* [#8-1] at 6. Additionally, the current case arose from a foreclosure dispute on that property, which is indisputably located in Georgia. The liens and deeds are recorded in Georgia. A Georgia state court has adjudicated the liens' priorities. Therefore, this issue is unique and local to Georgia. Because the Georgia state court's default judgment and order in regard to the priority of the liens is highly relevant to this case, a court local to Georgia has a substantial interest in deciding this case. Moreover, the Georgia federal court is more suitable to adjudicate a case involving Georgia state court decisions.

Therefore, the Court finds that this factor weighs strongly in favor of transfer.

## F.    Plaintiff's Choice of Forum

"[U]nless the balance is strongly in favor of the movant the plaintiff's choice of forum should rarely be disturbed." *Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992) (quoting *William A. Smith Contracting Co. v. Travelers Indem. Co.*, 467 F.2d 662, 664 (10th Cir. 1972)). However, if the plaintiff does not reside in the district, "the plaintiff's choice of forum receives less deference." *Emp'rs Mut. Cas. Co.*, 618 F.3d at 1168. Further, courts also "accord little weight" to a plaintiff's choice of forum when the "facts

giving rise to the lawsuit have no material relation or significant connection to the plaintiff's chosen forum." *Id.*

Here, Plaintiff does not reside in Colorado, and his only connection with Colorado is that one of the Defendants, SLS, is a Colorado corporation with its principal place of business in Colorado. *Compl.* [#1] ¶¶ 5, 10. Further, the facts giving rise to this lawsuit have no material relation or significant connection to Colorado. Plaintiff asserts that the hiring of Defendant ALAW by Defendant SLS took place in Colorado, and some communications were sent or received from Colorado by Plaintiff. *Response* [#20] ¶ 15. However, the most significant events underlying this case took place in Georgia. The Property is located in Georgia. *Compl.* [#1] ¶ 5. The Property's liens and deeds are recorded in Georgia. The court that adjudicated the priority of the liens on the Property is located in Georgia. *See Ex. 1, Default Judgment and Order as to Calvin White, Andre Page, and Henry Higgins Only* [#8-1]. The alleged FDCPA and RESPA violations took place in Georgia. *Compl.* [#1] ¶¶ 50-102. The alleged Georgia statutory and common law violations took place in Georgia. *Id.* [#1] ¶¶ 148-190. Therefore, the substantial facts giving rise to this lawsuit took place in Georgia, and Plaintiff has not shown a sufficient nexus between his claims and Colorado. Thus, the Court can only "accord little weight" to Plaintiff's choice of forum.

Therefore, the Court finds this factor weighs slightly against transfer.

## G.   Balancing the Factors

Here, among all the factors, only Plaintiff's choice of forum weighs against transfer. Although "the plaintiff's choice of forum should rarely be disturbed," courts accord little

weight to the plaintiff's chosen forum if the plaintiff does not reside in the district or "facts giving rise to the lawsuit have no material relation or significant connection to the plaintiff's chosen forum."  *Scheidt*, 956 F.2d at 965; *Emp'rs Mut. Cas. Co.*, 618 F.3d at 1168.  Here, Plaintiff does not reside in Colorado and the facts giving rise to the dispute do not have significant connection to Plaintiff's chosen forum.  Therefore, the Court accords little weight to Plaintiff's choice of forum, and correspondingly concludes that Defendants have provided sufficient evidence to outweigh Plaintiff's choice.  Having carefully considered the relevant factors, the Court finds that Defendants have met their burden of showing that Plaintiff's chosen forum is inconvenient.  Accordingly, the Court respectfully **recommends** that the Motion [#8] be **granted** and that this case be transferred to the Northern District of Georgia.

## IV.  Conclusion

For the foregoing reasons, the Court respectfully **RECOMMENDS** that the Motion [#8] be **GRANTED**.

IT IS HEREBY **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P.  72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions.  *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).  A party's objections to this

Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).


Dated:  June 13, 2022

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge

–13–